## UNITED STATES v. SINCLAIR REFINING CO.

No. 2348.

Circuit Court of Appeals, Tenth Circuit.

March 11, 1942.

Frank J. Dugan, of Washington, D. C. (Norman M. Littell, Asst. Atty. Gen., Whit Y. Mauzy, U. S. Atty., of Tulsa, Okl., John F. Cotter and Charles R. Denny, Jr., both of Washington, D. C., Macdonald & Files, of Pawhuska, Okl., and Moss & Young, of Tulsa, Okl., on the brief), for appellant.

Bradford J. Williams and Paul B. Mason, both of Tulsa, Okl. (Edward H. Chandler, Summers Hardy, and Roscoe E. Harper, all of Tulsa, Okl., on the brief), for appellee.

R. H. Wills, of Tulsa, Okl. (Donald Campbell, Clay Tallman, L. G. Owen, Guy H. Woodward, and Ray S. Fellows, all of Tulsa, Okl., on the brief), amici curiae.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

The United States, in its own behalf and on behalf of the Osage Tribe of Indians, instituted this action against Sinclair Refining Company, a common carrier of oil by pipe line, to recover damages. After answering to the merits, the defendant filed a motion for summary judgment. The amended complaint in cause numbered 2569, entitled United States v. Sinclair Prairie Oil Company, lately pending in the trial court, motion to dismiss such cause, order dismissing it, and the opinion, judgment and the mandate of this court in a companion case were adopted by reference. United States v. Stanolind Crude Oil Purchasing Co., 113 F.2d 194. The basis of the motion was that the issues, matters and things involved in this action were finally and conclusively determined adversely to the United States in that cause. A motion for judgment on the pleadings was joined with the motion for summary judgment. The basis of that motion was that the amended complaint failed to state a claim upon which relief could be granted. The court entered judgment sustaining both motions and dismissing the cause. The judgment recited that it was predicated upon a consideration of the amended complaint, the motion for summary judgment, the exhibits made a part of it by reference, the briefs of the

United States filed in the other case, the pleadings of the United States in all cases theretofore filed against various companies which had purchased oil produced on lands of the Osage Tribe, oral arguments, and the response of counsel to the interrogation of the court. The United States appealed.

The parties renew grips here on the question whether the amended complaint stated a cause of action on which relief could be granted. It was alleged in the complaint that pursuant to various enumerated treaties and acts of Congress the tribal lands of the Osage Indians situated in Osage County, Oklahoma, were leased on a royalty basis to divers persons, firms and corporations for the production and marketing of oil, a copy of the form of the leases being attached to the pleading; that all purchases of oil belonging to the tribe were made under and in accordance with division orders, a copy of the form of such orders likewise being attached; that under the provisions of such orders the defendant (and its predecessors in interest whose liability had been assumed by the defendant—hence for convenience reference will be made herein only to the defendant) had at all times mentioned been designated and selected by the various lessees and the various purchasers of oil produced from lands of the tribe as trustee and common carrier to receive such oil, and to correctly measure and report the quantity or volume thereof; that the division orders provided that the measurements of the defendant should in all instances govern and control settlements and payments to be made to the tribe for its royalty oil; that by reason of such provisions, and by reason of a certain regulation promulgated by the Secretary of the Interior, a copy of which was attached, the defendant became and was the agent, representative and trustee of the various purchasers of oil and of the plaintiff in respect to measuring, gauging, and reporting the quantity of oil delivered to it for transportation; that the defendant occupied toward plaintiff a relationship of trust and confidence and was therefore obligated to exercise the utmost good faith in performing the terms of the division orders and regulations; that, acting as the agent of the purchasers, the defendant did over a period of approximately twenty-one years purposely and fraudulently measure the oil purchased by such purchasers and delivered to the defendant

for transportation in such manner as to receive an amount largely in excess of the quantity reported, the amount of such excess being unknown to plaintiff; that defendant retained and appropriated such excess oil to its own use; and that the amount of such excess oil could not be ascertained or determined without an examination and audit of the books and records of the defendant. The prayer was for an order authorizing such audit, and on final hearing, for judgment for the value of the property interest and royalty interest of the tribe in the excess oil above that reported.

It was provided by regulation of the Secretary of the Interior that the superintendent of the Five Civilized Tribes should be authorized to make arrangements with the purchasers of oil for the payment of the royalty oil but that such arrangements should not relieve the lessee from responsibility for payment in the event the purchaser should fail, neglect, or refuse to pay for it; that no oil should be run to any purchaser or delivered to the pipe line or other carrier for shipment, or otherwise conveyed or removed from the leased premises, until a division order had been executed, filed, and approved by the superintendent; that the lessee or his representative should be present when oil was taken from the leased premises under any division order, should be responsible for the correct measurement, and should report all oil run; and that the lessee should authorize the pipe line company or the purchaser to furnish the superintendent with monthly statements showing the gross barrels run as common-carrier shipment or purchased from his lease or leases. The division orders, executed by the lessee and the purchaser and approved by the superintendent, provided that the oil should be delivered by the seller f. o. b. the pipe line; that payment should be made to the persons named therein, or their assigns, in proportion to their respective interests, as shown therein; that settlement should be made monthly; and that pipe line grades and measurements should govern and control in all settlements. The procedure in the field was that tank tables showing the measurements and volumes of the respective receiving tanks were filed with the superintendent of the agency; oil was run from the wells into the tanks; a guager for the defendant or other pipe line carrier, in company with a representative of

the lessee, measured the depth of the oil in each tank before any oil was run into the pipe line; the measurement was placed on a so-called run ticket made out in quadruplicate by the gauger and witnessed by the representative of the lessee; the oil was then run from the tank into the pipe line, and after the run had been completed the tank was again measured by the gauger of the defendant or other pipe line carrier in company with the representative of the lessee, and that measurement was likewise placed on the run ticket; and the lessee then furnished the superintendent of the agency copies of all tank tables and run tickets. That general custom or procedure in the industry was of long standing and substantially uniform. Judicial knowledge may therefore be taken of it. United States v. Stanolind Crude Oil Purchasing Co., 10 Cir., 113 F. 2d 194. And it was pursuant to the regulation, the division orders, and the trade custom that the defendant made measurements of the oil produced on lands belonging to the tribe and furnished run tickets.

■ Manifestly, it was attempted in the amended complaint to state a cause of action in deceit, and the gist of such a cause is fraud. The essential elements of the claim attempted to be pleaded were that the defendant made false representations relating to a material matter, that it knew such representations were false, that they were intended or reasonably calculated to influence the superintendent of the agency or some other person acting on behalf of the tribe, that the superintendent or such other person relied and acted upon such representations, or was induced not to act, and that such representations caused injury to the tribe. Ming et al. v. Woolfolk, 116 U.S. 599, 6 S.Ct. 489, 29 L.Ed. 740; Kimber v. Young, 8 Cir., 137 F. 744; Stafford v. McDougal, 171 Okl. 106, 42 P.2d 520. But no particular form or manner of making the false representation was essential, and recovery for damages proximately and reasonably arising from deceit is not always limited to the immediate parties to a contract. Highland Motor Transfer Co. v. Heyburn Bldg. Co., 237 Ky. 337, 35 S.W.2d 521.

■ Neither the United States nor the Osage Tribe was a formal party to the division orders, but it was provided by regulation that copies of them should be filed with the superintendent and be approved by him; and the facts expressly pleaded together with the prevailing custom and usage in the industry make it clear that the defendant knew or reasonably anticipated that copies of the run tickets were being and would be filed with the superintendent, and that settlements for the royalty oil were being and would be made in reliance upon them. When the defendant assumed to act and did act in the circumstances and under the conditions outlined, it was obligated to exercise good faith toward the tribe and those representing it in respect to correctly measuring and reporting the quantity of oil passed from the storage tanks into its pipe lines, even though no express contractual relationship existed between them. The law imposed that duty upon it. Glanzer v. Shepard, 233 N.Y. 236, 135 N.E. 275, 23 A.L.R. 1425. The amended complaint alleged in substance that in violation of that duty, the defendant throughout a period of more than twenty years repeatedly, purposely and fraudulently made and furnished run tickets which contained false information and data relating to the quantity of oil, and in connection therewith received into its pipe lines large quantities for which no accounting has been made to the tribe. By its motions for judgment the defendant admitted the facts thus pleaded. The making and furnishing of such run tickets with knowledge or reasonable anticipation that copies were being and would be filed with the superintendent and that the settlements for royalty oil were being and would be made in reliance upon them amounted to the making of false representations to the superintendent relating to a material matter, with knowledge that such representations were false and that the superintendent would act upon them. And such a fraudulent breach of duty toward the tribe with its consequent deceit rendered the defendant liable for the damage which the tribe sustained. Glanzer v. Shepard, supra.

■ It was not expressly alleged in the amended complaint that in making settlements for royalty oil, the superintendent relied and acted upon the misrepresentations furnished in the run tickets. But it was implicit in the allegations contained in the pleading and the usage in the trade, all fairly considered together, that settlements for royalty oil were made in reliance upon such misrepresentations, to the injury of the tribe. And the fraud was not otherwise alleged with the detail,

clarity and precision indicated by recognized standards of good pleading. But it was charged sketchily that the defendant deliberately and repeatedly understated the volume of oil received for the purpose of defrauding the tribe, and no motion was made or order entered under Rule of Civil Procedure 12(e), 28 U.S.C.A. following section 723c, for a more definite statement or for a bill of particulars. Instead, the entire cause was dismissed. The deficiencies in the pleading were not such as to call for that action, at least without attention being first directed to them and an opportunity afforded for their correction. Leimer v. State Mut. Life Assur. Co. of Worcester, Mass., 8 Cir., 108 F.2d 302; Levenson v. B. & M. Furniture Co., Inc., 2 Cir., 120 F.2d 1009.

■ The trial court shared the view of the defendant on the motion for summary judgment that the issues, matters and things involved in this action were determined adversely to the United States in the cause against Sinclair Prairie Oil Company, to which reference has been made. Repeating, it was alleged in the amended complaint in this action that in receiving the oil into its pipe lines, the defendant acted as the agent and representative of the various purchasers of such ·oil and for the plaintiff. In making disposition of the motion for summary judgment, it was appropriate for the court to take into consideration the record in the other cause and in other like causes against other purchasers of oil, the briefs of the United States in such causes, and the statements or admissions of counsel for the United States made in response to interrogatories of the court. And from the whole record it appeared that Sinclair Prairie Oil Company was the purchaser of much of the oil now alleged to have been fraudulently undermeasured and falsely reported, that in receiving such oil into its pipe line the defendant here acted as the agent for such purchaser, and that the United States failed to recover in that action.

■ A plaintiff cannot split up his claim or demand and prosecute it in piecemeal fashion by separate suits. Stark v. Starr, 94 U.S. 477, 24 L.Ed. 276; Baltimore Steamship Company v. Phillips, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069; Akin v. Bonfils, 67 Okl. 123, 169 P. 899. Neither will he be permitted to maintain an independent action against the agent after failing to prevail on the merits in an earlier suit against the principal based upon the same wrong. Bigelow v. Old Dominion Copper Mining & Smelting Co., 225 U.S. 111, 32 S.Ct. 641, 56 L.Ed. 1009, Ann.Cas.1913E, 875; Portland Gold Mining Co. v. Stratton's Independence, Limited, 8 Cir., 158 F. 63, 16 L.R.A.,N.S., 677; Emery v. Fowler, 39 Me. 326, 63 Am.Dec. 627; Giedrewicz v. Donovan, 277 Mass. 563, 179 N.E. 246; Whitehurst v. Elks, 212 N.C. 97, 192 S.E. 850; Jones v. Valisi, 111 Vt. 481, 18 A.2d 179. And where a second suit between the same parties, or their privies, is on the same cause of action as the first, the final judgment in the prior action is conclusive as to all matters which were actually litigated and as to every issue, claim or defense which might have been presented. But where the second suit is between the same parties, or their privies, but upon a different cause of action, the judgment in the former operates as an estoppel only as to issues and questions which were actually litigated and determined. Cromwell v. Sac County, 94 U.S. 351, 24 L.Ed. 195; Baltimore Steamship Company v. Phillips, supra; Tait, Collector of Internal Revenue, v. Western Maryland Railway Co., 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405; Larsen v. Northland Transportation Co., 292 U.S. 20, 54 S.Ct. 584, 78 L.Ed. 1096; Little v. Keaton, 10 Cir., 38 F.2d 457, certiorari denied 282 U.S. 847, 51 S.Ct. 26, 75 L.Ed. 751; Divide Creek Irr. Dist. v. Hollingsworth, 10 Cir., 72 F.2d 859, 96 A.L.R. 937; Cressler v. Brown, 79 Okl. 170, 192 P. 417.

■ Some of the language contained in the complaint in the suit against Sinclair Prairie Oil Company was broad and general, but the essence of the action was to recover for loss sustained as the result of a deduction of three per cent of the oil produced on lands of the tribe and received into the pipe lines for the account of the purchaser, such deduction being made on account of dirt and sediment. The division orders, filed with the superintendent of the agency and approved by him, expressly authorized such a deduction, and it was regularly and openly made with the knowledge of the superintendent and in accordance with the uniform usage and practice in Oklahoma. The controversy there presented for determination related solely to that deduction. That was the gravamen of the suit. United States v.

Stanolind Crude Oil Purchasing Co., supra. Here the United States sought to recover from the pipe line company for loss resulting from secret measurements and false reports for the purpose of defrauding the tribe of the returns to which it was entitled on other oil. Although the relationship between the defendant there and the defendant here was that of principal and agent, the two wrongs were distinct, the two causes of action were different, the issues here were not presented or decided there, and therefore the judgment in that cause did not foreclose the maintenance of this suit, either as res judicata or estoppel.

■■■■ In an effort to support the judgment, the defendant advances the contention that the tank tables, the run tickets, the monthly reports of production, the monthly reports of oil purchased, all furnished by the lessee and the purchaser to the superintendent of the agency, and the payment of amounts shown thereby to be due as royalty to the superintendent, constituted each month a settled transaction which amounted to an account stated and also an account settled, and that the allegations contained in the amended complaint were insufficient to warrant the impeachment of such account. An account stated and an account settled cannot be impeached after long delay except for fraud or mistake. Standard Oil Company v. Van Etten, 107 U.S. 325, 1 S.Ct. 178, 27 L.Ed. 319; Kretni Development Co. v. Consolidated Oil Corporation, 10 Cir., 74 F.2d 497, certiorari denied 295 U.S. 750, 55 S.Ct. 829, 79 L.Ed. 1694. But here the run tickets constituting the bases of the settlements were expressly attacked on the ground of fraud.

■■■■ Finally it is contended by amici curiae that compliance with the rules and regulations of the Secretary of the Interior will be presumed; that judicial knowledge will be taken of the customs and usages in the industry with respect to the production, transportation, measurement, and reporting to the superintendent of the agency of the volume of oil passing into the pipe line; that when such presumption and such judicial knowledge are applied, it becomes obvious that a cause of action for deceit was being asserted which could not be sustained; that a court should not be required to fritter away its time in the consideration of a case of that kind; and that therefore the judgment should be upheld.

There is no occasion for extended disquisition as to whether proof to sustain the material allegations of the amended complaint could in all probability be produced. It is enough to say that in our opinion the cause of action pleaded was not so obviously without merit or substance as to warrant its dismissal in advance of any opportunity for the adduction of evidence to support it.

The judgment is reversed and the cause remanded with directions to deny the motion for summary judgment and the motion for judgment on the pleadings.

PHILLIPS, Circuit Judge (concurring).

The amended complaint in this case as originally drafted sounded in conversion. This court, in United States v. Stanolind Crude Oil Purchasing Co., 10 Cir., 113 F. 2d 194, held that none of the oil produced under the leases from Osage Tribe of Indians belonged to the Tribe. Thereupon, the United States abandoned the conversion theory. Instead of recasting the pleading, the United States simply amended the pleading by eliminating therefrom certain of the allegations relating to conversion, and sought to maintain its action on the theory of fraud and deceit.

The amended complaint as finally amended alleged that by virtue of the provisions of the division orders, Sinclair had been designated and selected by the lessees, and the purchasers of oil produced from the lands of the Tribe, as trustee and common carrier, to receive such oil and to correctly measure and correctly report same; that by the terms of such division orders, it was provided that the measurements of Sinclair and its predecessors should in all instances govern and control settlements and payments to be made to the Tribe as royalty; that by reason of the provisions of the division orders and the applicable departmental regulations, Sinclair and its predecessors in measuring and gauging the oil and in reporting the measurements, was the trustee, agent, and representative of the purchasers of such oil and of the United States and occupied toward the United States a relation of trust and confidence; and that it was the duty of Sinclair and its predecessors, in carrying out and performing the terms of such regulations and division orders, to exercise the utmost good faith toward the United States; that Sinclair and its predecessors, as the agent of the purchasers, measured and computed

the oil purchased by such purchasers, produced from the lands of the Tribe, and transported such oil to the purchasers; that Sinclair and its predecessors, by its agents, servants, and employees "purposely and fraudulently so measured all oil purchased by said purchasers and produced from the lands" of the Tribe "so as to receive * * * an amount largely in excess of 100 per cent of all the oil received into their lines for said purchasers * * * that after so fraudulently and incorrectly measuring and computing said oil, said defendant [Sinclair] and its * * * predecessors * * * have, * * * received into their pipe lines, * * * such oil so incorrectly and fraudulently measured, computed and reported."

There is no specific allegation of the facts and circumstances constituting the fraud with particularity as required by Rule 9(b) of the Rules of Civil Procedure; and there is no allegation that fraudulent reports were made except by way of recital. There is no specific allegation that the Tribe relied on such reports, was deceived thereby, and in such reliance, acted, or failed to act, to its prejudice. All those matters are left to implication.

While the pleading was defective, the defects could have been cured by proper amendments and therefore the motion for judgment on the pleadings and for summary judgment should have been denied.[1] But I do not think we should tacitly give our approval to such an imperfect pleading. Rather, I think we should reverse and remand with instructions to require the United States to allege with particularity the facts and circumstances constituting the fraud, how, and in what way the oil was incorrectly measured; and, if such were the facts that incorrect reports of measurements were made, that the Tribe relied thereon, and because of such reliance, did, or failed to do, something to its prejudice, as required by settled rules respecting the pleading of fraud. The failure to plead the fraud with particularity places Sinclair at great disadvantage since it must defend against charges covering a period of many years, and against charges leveled against its predecessors on a claim of assumption of liability.

---

[1] Geck v. Security State Bank, 133 Okl. 67, 271 P. 152, 155; Owens v. Moraine, 105 Okl. 285, 232 P. 818; Abraham v. Gelwick, 123 Okl. 248, 253 P. 84, 85, 86; Good v. First National Bank of Roff, 88 Okl. 110, 211 P. 1051, 1052; Wallace v. Collier, 59 Colo. 144, 147 P. 660, 661; Consolidated Music Co. v. Morrison, 30 Cal.App. 303, 158 P. 342; Bates v. Escondido Union High School District, 133 Cal.App. 725, 24 P.2d 884, 886; Jamestown Iron & Metal Co. v. Knofsky, 291 Pa. 60, 139 A. 611; Vierling v. Baxter, 293 Pa. 52, 141 A. 728, 729; Bell v. Friedman, 161 Minn. 406, 201 N.W. 614.