## FRED F. FOX CO. v. FULTON.
### No. 35721.

Supreme Court of Oklahoma.
Jan. 12, 1954.

McKinney & McKinney, Clarence L. Hall, Oklahoma City, for plaintiff in error.

Goodson & White, Oklahoma City, for defendant in error.

CORN, Justice.

This is an action by Fred F. Fox Company, a partnership, consisting of Fred F. Fox, Simon Hughes and E. Lee Curry, insurance agents, against W. D. Fulton to recover alleged balance due on account for premiums on an insurance policy sold by them to defendant. The policy was issued by the Connecticut Fire Insurance Company, forwarded to plaintiffs and by them delivered to defendant.

Defendant in his answer denies the correctness of the account sued for and by way of offset claims a credit on the account in the sum of $621.34. The facts upon which he relies to establish credit are fully set forth in the answer and will be referred to in the discussion of the evidence. The answer in effect amounts to a plea of an account stated.

Upon motion of defendant the Connecticut Fire Insurance Company was made a. party defendant and defendant filed a cross-petition against it to recover on the policy. The insurance company demurred to the petition on the ground of misjoinder of causes of action. The trial court sustained the demurrer and the case against the insurance company was separately docketed and is now pending.

A jury was waived and the case was submitted to the court for trial. The court in its judgment allowed defendant the credit claimed and rendered judgment in favor of plaintiffs for the sum of $241.96.

Plaintiffs appeal and assert that there is a total lack of evidence to sustain defendant's defense of an account stated and the court therefore erred in allowing him the credit claimed on the account and erred in failing to render judgment in their favor for the full amount claimed.

Defendant in support of his defense in substance testified: He was engaged in the business of equipment contractor. In the year 1945 he purchased from plaintiffs a contractor's floater policy. The policy was issued by the Connecticut Fire Insurance Company. Later in that year while he was using certain equipment covered by the policy the equipment turned over and destroyed four tires placed on the equipment. He reported the loss to plaintiffs and was advised by Mr. Fox, one of the plaintiffs, that it would take some time to collect the insurance. He then bought and replaced the tires at a cost of $621.34. He was later advised by Mr. Fox that the loss sustained was not covered by the policy but that he would take care of the loss in some manner. Mr. Fox also told him at the time he made application for the insurance that it covered damage to the tires on the equipment. He heard nothing further about the matter until about August 25, 1947, when plaintiff Fox delivered to him a draft issued by the insurance company in the sum of $621.40 in payment of the loss. The draft was endorsed by him and delivered to Mr. Fox and the amount thereof, $621.34, was credited on his account. The draft was drawn on the First National Bank of Hartford, Connecticut, and upon presentation was dishonored and the bank noted on the face of the draft, "Payment stopped." "Protested for nonpayment October 2, 1947." He received no notice and had no knowledge that the draft had been dishonored until late in January 1949, when he cancelled the policy and ceased doing business with plaintiffs. He received monthly statements from plaintiffs showing the condition of his account and the balance then due each month from that date until he ceased doing business with the company and on each of such statements the credit given was recognized.

The amount was not charged back to him until January 1949 when he ceased doing business with plaintiffs. Defendant however, testified that the credit was given on his account on the belief or assumption that the draft was a valid draft and would be honored when presented for payment at the bank on which it was drawn.

It is not contended by defendant that the plaintiffs accepted the draft as absolute payment on his account and concedes that if he is not entitled to the credit claimed he is indebted to plaintiffs in the full amount claimed by them.

Plaintiffs offered evidence to the effect that shortly after the draft was dishonored defendant was notified thereof and they sought on different occasions to adjust the matter with defendant and the draft was carried on their books as cash in the hope that an amicable settlement might be made with defendant. They did not charge the item back to him until January 1949, when he ceased doing business with them. Mr. Fox denied that he at any time stated to defendant that he would personally take care of the loss.

It is the contention of plaintiffs that the evidence is wholly insufficient to sustain defendant's defense of an account stated. With this contention we are inclined to agree.

In order to constitute an account stated the transaction must be understood by both parties to be a final adjustment of the respective demands between them taken into consideration in the accounting. Moyer v. Closs, 186 Okl. 354, 97 P.2d 901; M.

E. Trapp, Associated v. Tankersley, 200 Okl. 117, 191 P.2d 202; Givens v. Parker, Okl., 258 P.2d 936.

■ The evidence offered by defendant in our opinion does not establish that at the time the credit was given on the account it was agreed and intended between the parties that the credit given should constitute a final adjustment between them as to the balance due.

Defendant in his brief states that it is now conceded by both parties that the loss sustained by defendant is not covered by the policy; that upon ascertaining such fact plaintiffs, in an obvious effort to retain defendant's business agreed to take care of the loss. Plaintiffs thereafter fully performed that promise and credited the account with the amount thereof and recognized such credit in the monthly statements above referred to for a period of approximately eighteen months without ever having made any demand on him for payment of disputed credit, all of which action he asserts creates a perfect state of facts for an account stated or an accord and satisfaction.

There is no evidence to sustain the statement of counsel that plaintiffs credited the account in order to retain defendant's business. No such agreement was entered into between the parties and in fact no agreement of any kind was made that plaintiffs would then credit the account with the amount of the loss. Nor is there any evidence to sustain the statement that plaintiffs performed that promise by crediting the account with the full amount of the loss.

The credit was not given on the faith of that promise. The evidence shows that after the alleged promise was made plaintiffs continued in their efforts to persuade the insurance company to pay the loss. The insurance company finally agreed to do so and issued their draft payable to defendant in the sum of $621.34 in payment and settlement of the loss. The draft was endorsed by defendant and delivered to plaintiffs and plaintiffs credited defendant's account with the full amount thereof. Defendant testified that the credit was given on the account in the belief or assumption that it was a valid draft and would be honored and paid when presented at the bank for payment. We think it quite clear that credit was not given on the account in performance of the alleged promise made to take care of the loss but was given in the belief that the draft issued by the insurance company and endorsed by defendant and delivered to them was a valid draft and would be honored and paid when presented.

■ There was no agreement that the acceptance of the draft should constitute absolute payment on the account. In the absence of such agreement it may not be so treated. Mutual Life Ins. Co. v. Chattanooga Savings Bank, 47 Okl. 748, 150 P. 190, L.R.A.1916A, 669; Wheeler & Motter Mercantile Co. v. Kitchen, 67 Okl. 131, 169 P. 877, L.R.A.1918C, 160.

The evidence discloses that the credit on the account was given by plaintiffs through a mistake of fact. The account was credited under the mistaken belief that the draft issued by the insurance company would be paid when presented for payment. Therefore, when payment of the draft was stopped by the drawer plaintiffs had the right to correct the mistake by recharging defendant on the account with the amount credited.

The evidence in our opinion shows the transaction to constitute merely an account rendered rather than an account stated.

Judgment reversed and the cause remanded with directions to enter judgment in favor of plaintiffs for the full amount claimed.

JOHNSON, V. C. J., and DAVISON, O'NEAL and WILLIAMS, JJ., concur.