**ROADWAY EXPRESS, Inc., Plaintiff in Error,**

v.

**Era Murray GORDON, Defendant in Error.**

**No. 36179.**

Supreme Court of Oklahoma.

Nov. 30, 1954.

Nesbitt & Nesbitt, Miami, Wise, Roetzel, Maxon, Kelly & Andress, Akron, Ohio, Pierce, Mock & Duncan, Oklahoma City, for plaintiff in error.

Arthur G. Croninger, Miami, for defendant in error.

CORN, Justice.

The circumstances out of which evolved the litigation culminating in this appeal are presented by a voluminous record which precludes recitation of all matters reflected by the pleadings and evidence. The following summary of the factual background will be of value in considering the issues presented to the trial court.

In 1948 plaintiff was the owner of two motor tractors and trailers, commonly referred to as transport trucks. This appeal concerns only one tractor-trailer which hereafter will be referred to as Unit 447, the designation used by the parties. At all times herein involved this unit was operated by C. A. Butcher, plaintiff's driver. June 11, 1948 plaintiff, through her agent (H. A. Saunders) entered into a Lease and Operating Agreement with defendant, the pertinent portion of which provided:

"3. Lessor agrees to maintain said equipment in first class and safe operating condition and at Lessor's expense procure all license and permit tags or plates required for the operation of equipment, and pay all taxes assessed against the equipment, pay all operating expenses, assume and indemnify Roadway Express, Inc., against liability or expense for work done, materials or appliances used or purchased in discharge of lessor's covenants and loss or damage to the property of Roadway Express, Inc., or damage to any cargo being transported by lessor for Roadway Express, Inc., that may result from defective equipment or the negligence of lessor. Lessor also agrees to a charge of not to exceed $50.00 for any loss or damage to any cargo that is not covered by Roadway Express, Inc., cargo Insurance.

  ·*    *    *    *    *    *

"6. Roadway Express, Inc., agrees to pay the lessor for the use of the above equipment described in clause 2, as follows:

    "Basis of Compensation
               Western

Basis ————————————————————

(Social Security is to be deducted on amounts shown as wage, only).

"7. Roadway Express, Inc., further agrees to procure liability and property damage and cargo insurance as required by law, but no fire, theft, or collision insurance on the equipment described above."

June 3, 1949, defendant instructed Butcher to proceed to the loading dock of a manufacturing concern in Chicago, Illinois, where Unit 447 was loaded with heavy machine tools (lathe and drill press) consigned to Borger, Texas. Butcher assisted, and gave directions to, the consignor's employees as to the loading of the machines, and thereafter left Chicago with the cargo in an undamaged condition. Upon arrival in Miami, Oklahoma (June 5) it was discovered that the cargo had been damaged, by reason of having fallen over while in transit. Required repairs thereto, and additional transportation expense, necessitated expenditure of the aggregate sum of $2,001.31. Notice of loss by damage to cargo was given to plaintiff in writing June 28, 1949. Operation of Unit 447 under the lease agreement continued until May 1, 1950, when the agreement was terminated voluntarily.

During existence of the lease agreement defendant rendered plaintiff written monthly accounts reflecting all items, i. e. debits, credits, charges, balances arising out of all transactions, as a basis for determining the compensation due plaintiff. A monthly account reflecting a balance due plaintiff was accompanied by defendant's check or voucher for such balance. This system was in effect from June, 1948 to May, 1950, and also covered the month of July, 1950. At different times during this period (August and September, 1949, and February and March, 1950) defendant debited plaintiff's account with varying sums, in a total

amount equal to the loss by damage incurred by defendant as above mentioned. All statements and checks in settlement of balances due were received by plaintiff without protest or objection.

Thereafter plaintiff questioned defendant's right to charge her account for the loss arising from this damage to the cargo. After some correspondence defendant advised plaintiff's counsel the balance due in final settlement of plaintiff's account had been held up pending disposition of certain claims. Thereafter defendant mailed plaintiff a check ($228.11) purportedly in final settlement of their accounts. This check was accepted and deposited in plaintiff's bank without objection, until commencement of this action.

Plaintiff based her cause of action upon defendant's alleged wrongful deduction, from money due her under the lease agreement, of various amounts for loss arising from damage to cargo as set forth above. It was alleged that, under the agreement quoted in part heretofore, defendant could not charge plaintiff in excess of $50 for loss or damage to any merchandise not covered by the cargo insurance which defendant was required to procure in compliance with the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq.; by the terms of such insurance policy the cargo was covered only for $1,000, and for any amount over that plaintiff could be held liable for only $50. Plaintiff asked judgment totaling $2,402.77. A second cause of action alleged breach of the same type of agreement covering Unit 433, but no evidence was introduced concerning such alleged cause of action.

Defendant filed an extended answer setting up four separate defenses, in response to which plaintiff filed motion to make more definite and certain and to strike. At a hearing in the nature of a pretrial proceeding the motion was sustained in part and overruled in part. Plaintiff filed her reply and the case proceeded to trial without a jury. Upon the basis of earlier rulings the only items of damage involved resulted from the damaged machinery detailed heretofore.

Following opening statements of counsel the trial court narrowed the issues by pointing out that the first issue involved was whether plaintiff, through her agent and drivers, was guilty of negligence in maintaining or operation of the truck between the time plaintiff received the cargo (June 3) and the date same was delivered over to another carrier (June 7). The trial court found that the second issue involved was whether the statements of account reflecting items of expense were settled and rendered in such manner as to amount to an account stated, thus barring plaintiff's right to recover.

After hearing the evidence the trial court requested both parties to submit findings of fact and conclusions of law. Thereafter the trial made written findings of fact and conclusions of law. Defendant excepted to certain of the court's findings (5–11–15) and to Nos. 3–4–5 & 6 of the conclusions of law based thereon; and, likewise excepted to the court's refusal to adopt certain of defendant's submitted findings of fact and conclusions of law. Based upon the findings of fact and conclusions of law the court rendered judgment in plaintiff's favor for $1,951.31, together with costs and interest from the date of judgment.

Three contentions are urged as grounds for reversal of the judgment rendered, each of which is based upon error asserted in the trial court's findings of fact, in the conclusions of law announced, or in the trial court's refusal of defendant's requested findings of fact and accompanying conclusions of law. Consideration of defendant's argument necessarily requires recitation of portions of the evidence and the conclusions based thereon. Where possible, for brevity's sake, only the substance of the findings made, or requested, will be set forth.

The trial court, under findings of fact 5 and 15, found from the evidence that the damaged lathe was a narrow base, top heavy machine, which fell and was damaged as the result of having been improperly anchored, or braced, in loading; that if there was negligence in the loading and bracing both parties had contributed there-

to; that there was no negligence upon plaintiff's part from the time the lathe was received at the consignor's dock until plaintiff's possession (bailment) ended. Upon such findings the trial court concluded as a matter of law that plaintiff was not chargeable with negligence in loading and transporting the cargo which was damaged.

Opposed to the trial court's findings and conclusion defendant requested the court to find that plaintiff, by her driver, was negligent in transporting the cargo between Chicago, Illinois and Miami, Oklahoma, which negligence was the direct and proximate cause of the loss; and, as a matter of law, plaintiff was bound to exercise due care to prevent loss but had failed to use such care. Defendant's argument is that plaintiff was the bailee of the property and, since it was damaged during the term of the bailment, it was incumbent upon plaintiff to establish by competent evidence what caused the damage, and that same did not arise from failure to exercise due care. See Schulze v. Allison, 204 Okl. 147, 227 P.2d 658.

This argument, of necessity, is founded upon the interpretation defendant places upon the evidence, and by such interpretation concludes that plaintiff failed to discharge the burden of showing, by a preponderance of the evidence, that the damage did not result from her negligence. Respecting the argument that plaintiff's driver was negligent in actual transportation of this cargo, it must be noted that neither direct evidence nor permissible inference supports such theory. The only evidence relative to any unusual occurrence during the trip was that of the driver (Butcher). He testified that near St. Louis, Missouri, he was forced to pull quickly to the right of the road, to avoid a wreck with a car which passed and suddenly cut in front of his vehicle; there was no perceptible movement of the cargo as a result of such maneuver and such turn or swerve was not sharp enough to cause the load to shift, and his vehicle did not leave the road. It seems trite to point out the testimony was sufficient to show the exercise of due care by plaintiff, in the absence of direct testimony, or other circumstances tending to controvert such evidence.

Defendant insists there was no evidence to support the trial court's findings of fact (5 and 15) and conclusion of law No. 3, the substance of which was set forth above. Much is sought to be made of the testimony that plaintiff's driver assisted in the loading of the machinery. The facts were that Butcher knew nothing concerning the proper method of loading such cargo, and only indicated to the consignor's employee, an experienced loader, which side of the trailer he desired to carry the heaviest portion of the load. Thereafter this employee directed the actual loading and bracing of the machinery and advised Butcher the loading was completed, and he then returned to defendant's dock where some other freight was loaded. During a service stop in Miami, Oklahoma, the driver noticed a small hole in the side of the trailer and advised defendant's safety man of such fact. Examination of the cargo disclosed that the lathe had slipped, or fallen, from the wooden braces which had been used to support it when loaded. At that time additional bracing was put under the lathe to prevent its falling over, and when delivered to defendant's dock in Oklahoma City the condition was the same as at the time of first discovery of the damage.

In addition to the testimony there were introduced in evidence photographic exhibits depicting the actual condition of the cargo after it had fallen from the supports used in loading. This evidence, when considered with the testimony relative to the loading of this cargo, provided sufficient basis for the trial court's finding that the loss by damage did not result from negligence upon plaintiff's part, but was the direct result of not being properly anchored and braced when loaded. Defendant argues that because the evidence showed the cargo was in good condition when loaded in Chicago and thereafter was discovered to be damaged, this cannot support a finding of negligence in the loading. This argument is not persuasive, especially in view of the physical facts reflected by the evidence.

■ Defendant seeks to rely upon the rule that, having proved a bailment and the bailee's failure to return the bailed property in good condition, a prima facie case was established. However, this rule is subject to the qualification that when a bailee introduces evidence showing exercise of due care to prevent loss, the presumption of negligence disappears and the burden then shifts to the bailor to establish negligence by competent evidence. See English v. Traders' Compress Co., 167 Okl. 580, 31 P.2d 588, and cases therein cited.

■ Moreover, as a specific defense the defendant charged the loss in question occurred solely as the result of plaintiff's neglect and failure to transport this cargo safely. Recently in Thrasher v. Greenlease-Ledterman, Inc., 208 Okl. 507, 257 P. 2d 795, we pointed out that where a bailor alleges loss or damage stemming from the bailee's negligence, then mere proof of delivery of the property to the bailee in good condition and return of the property in damaged condition does not establish the customary presumption in the bailor's favor, but makes it incumbent upon the bailor to prove the negligence alleged.

■ In view of the evidence reflected by this record the trial court was correct in finding plaintiff free of negligence, and that the damage occurred as the result of negligence in the loading of this cargo, and in concluding as a matter of law that plaintiff was not responsible therefor. The trial court's conclusion of law was correct under either hypothesis revealed in the cases cited, supra.

Defendant bases a further claim of error upon the trial court's conclusions of law Nos. 4–5–6 and 7, and in the court's refusal to adopt defendant's requested findings of fact and related conclusions of law. The trial court found as a matter of law (No. 4) that the statements, etc. rendered by defendant and received by plaintiff did not develope into an account stated, an account settled, or an accord and satisfaction; that the last charge for damage to cargo was made March 20, 1950, and plaintiff never knew whether this was a final charge until after some correspondence, and in July, 1950, defendant was notified of plaintiff's objection to such charges. In No. 5 it was found that plaintiff was chargeable with only $50 loss, by reason of the parties contract, leaving a balance of $1,951.31 damages; and, No. 6, plaintiff was entitled to judgment for this amount.

The defendant's requested findings of fact were to the effect that all accounts were correct and agreed to between the parties up to July 3, 1950; that defendant had paid plaintiff everything due under the accounts rendered in accordance with the contract and she had accepted same in full satisfaction of all compensation due. Based thereon defendant requested conclusions of law to the effect each monthly account was settled and agreed to by the parties, and defendant had performed all obligations arising therefrom so that all dealings between plaintiff and defendant had been concluded and discharged; that plaintiff made no objection within a reasonable time of receipt of the monthly accounts and settlements, had failed to sustain the allegations of her petition, and that plaintiff's action should be dismissed.

Based upon the trial court's asserted errors in the findings of fact and conclusions of law as made, and in refusing those requested, the defendant complains that this judgment should be reversed because: (1) Under the facts and applicable law the accounts between these parties were stated and settled; (2) defendant did not breach any contract between the parties so as to give rise to a right of action in plaintiff to recover anything.

■ In connection with the first ground defendant quotes and relies upon the general rule, expressed in 1 Am.Jur., Accounts and Accounting, Sec. 16, distinguishing between an account stated and a settled account. An account stated may be had in instances where the accounts are examined and the balance shown admitted as true by the parties, whereas, when the balance thus admitted is paid an account is deemed to be a settled account. And, further, defendant quotes section 25 to the effect that rendition of an account and retention by the party to whom sent, without

objection made within a reasonable time may, under some circumstances, have the effect of establishing an account stated. Hence defendant insists that, since there was no evidence of fraud or mutual mistake upon defendant's part in these transactions, and because plaintiff accepted the monthly statements of account, and accompanying vouchers, or checks, without objection, their accounts became stated and settled and binding upon the parties, so that plaintiff cannot rightfully re-examine the accounts and dispute items therein after termination of the contract. To support this argument defendant relies upon cases from this court, and from other jurisdictions, to the effect that an account stated is a transaction understood between the parties as a final adjustment of matters between themselves, and when so understood the matter is a settled account which cannot be impeached after long delay, absent fraud or mistake. See Givens v. Parker, Okl., 258 P.2d 936; Williams v. Casparis Brothers, 113 Okl. 51, 238 P. 438; M. E. Trapp, Associated, v. Tankersley, 200 Okl. 117, 191 P.2d 202; United States v. Sinclair Refining Co., 10 Cir., 126 F.2d 827.

This statement of the general law, coupled with defendant's adept presentation of the matters involved herein, seemingly makes defendant's arguments quite persuasive. However, careful consideration of the matters disclosed by this record clearly demonstrates the fallacy of defendant's position, and reflects both the correctness of the trial court's judgment and the sufficiency of the evidence to support the findings of fact and conclusions of law upon which such judgment was based.

The manager of defendant's accounting department testified at length as to the mode of handling accounts of operators such as plaintiff. Upon cross-examination this witness disclosed that each month plaintiff was sent the original and copy of an itemized account of all operations for the preceding month, and that no duplicates were furnished without special request. Plaintiff never requested a duplicate except for March, 1950. The evidence showed defendant charged plaintiff's account as follows:

August 12, 1949—$119.20 (moving lathe for repair)

September 21, 1949—$1325.00 (cost of repairing lathe)

February, 1950—$100.43 (Addl. cost moving cargo for repair)

March, 1950—$456.68 (cost of repair to press)

The witness testified that following the August charge the next item was charged against plaintiff's account and that he still considered her account open, and not closed in respect to the items of damaged machinery. Thereafter the February charge was entered against her account, as well as an additional item entered through error, and March 20, 1950 the account was debited with the final charge. But, defendant's witness testified that during this entire period plaintiff's account was an open account against which defendant considered it had the right to make any further charges arising out of this matter.

On June 28, 1949, in response to inquiry, defendant advised plaintiff by telegram it was impossible to send her May check due to a large claim for damaged freight. Upon receipt of this advice plaintiff immediately wrote requesting information relative to the exact nature of such claim, the procedure followed by defendant concerning settlement of damage claims, and pointing out that she understood her account was to be charged only with deductible items not covered by insurance. As early as August 31, 1949, defendant was advised by letter of the necessity of receiving money to pay her obligations, that at the end of July Unit 447 had a credit of $1,385 but no check had been received for June, and asking for an immediate explanation of the accounts. From that time until this suit was filed a great deal of correspondence was carried on with defendant relative to charges against plaintiff's account, seeking a closing statement and an opportunity to adjust matters amicably. Defendant finally advised plaintiff that cost records subsequent to March, 1950, would be furnished, and that if plaintiff found reason to contest any items defendant would substantiate or adjust the questioned items. The foregoing represents only a brief statement of the

matters reflected in this record. Considered in connection with the testimony of defendant's agent that the account was considered as an open account, such evidence is of particular interest in view of defendant's argument that simply furnishing a monthly statement, which plaintiff received and retained without urgent objection, established such monthly statements as accounts stated.

 While defendant relies upon the rule stated in 1 Am.Jur., Accounts & Accounting, Sec. 16–23, there is a total failure to recognize the extent and limits of the rule. Section 27 of the same text states:

"Extent and Limits of Rule.—The rule that an account which has been rendered and to which no objection has been made within a reasonable time is to be regarded as admitted by the party charged as prima facie correct assumes that there was some indebtedness between the parties, for there can be no liability on an account stated if no liability in fact exists, and the mere presentation of a claim, although not objected to, cannot of itself create a liability. Moreover, the account rendered must be unambiguous and clearly indicate the nature and extent of the demand. * * *"

Measured by the foregoing rule it is clear defendant's evidence fails to establish that the statements rendered ever ripened or developed into an account stated. Insofar as the record discloses the matter reflected by the cost records failed to fully disclose the nature and extent of the damage defendant sought to charge against plaintiff's account. But, even more than this, it is plain defendant arbitrarily sought to fix liability for the loss upon plaintiff on the ground that, as a bailee, plaintiff was liable for any damage to cargo, without recognizing the contractual limits of her liability, whereas the mere presentation of such a claim could not create liability. Application of the rule above quoted may be observed in Gladys Belle Oil Co. v. Clark, 147 Okl. 211, 296 P. 461; Reinhart & Donovan Co. v. Williamson, 191 Okl. 539, 131 P.2d 765, and cases therein cited.

Other matters are presented in the briefs of the parties. By reason of the conclusion reached heretofore it is unnecessary to discuss these matters.

Judgment affirmed.

Supersedeas bond having been filed herein, and judgment having been asked thereon, same accordingly is rendered as prayed for by plaintiff.