Frank T. **FLEET**, Executor of the Estate of Margaret Fleet Kalmar, P.A.W.N. Enterprises and Frank T. Fleet, Inc., Plaintiffs–Appellees and Counter–Appellants,

v.

**SANGUINE, LTD.**, Defendant–Appellant and Counter–Appellee.

No. 73,132.

Supreme Court of Oklahoma.

June 2, 1993.

As Corrected June 3, 1993.

Robin F. Fields, Mary E. Mott, McKinney, Stringer & Webster, P.C., Oklahoma City, for appellees and counter-appellants.

Donald L. Kahl, Orval E. Jones, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, for appellant and counter-appellee.

OPALA, Justice.

Two issues are presented by defendant Sanguine Ltd.'s [Sanguine's or the operator's] appeal from a postjudgment order:[1] (1) Did the trial court err by adding *prejudgment interest as a penalty after* Plaintiffs–Appellees [the mineral owners] had accepted the operator's § 1101[2] offer of judgment? and (2) Should the trial court's memorialized judgment be corrected to make it conformable to the record? We answer both questions in the affirmative.

One additional issue is presented by the mineral owners' counter-appeal: Were auditing costs in the parallel ancillary proceeding for equitable accounting allowable against the operator? Our answer is in the affirmative.

## I

## THE ANATOMY OF LITIGATION

### A. THE BACKGROUND

EXOK, Inc. [EXOK] leased plaintiffs'[3] mineral interests in Section 13, Grady County [Section 13].[4] The leases give each mineral owner an one-eighth royalty,[5] and separate agreements [the letter agreements] provide that the lessee shall assign to the mineral owners a thirty-percent leasehold interest [the back-in interest] as soon as completion and production costs [payout] of any test well drilled in Section

---

1. The trial court's postjudgment order was filed March 31, 1989. The operator's timely petition in error followed on Monday, May 1, 1989.

2. 12 O.S.1981 § 1101. The pertinent terms of § 1101 are:

 "The defendant, in an action for the recovery of money only, may, at any time before the trial, serve upon the plaintiff or his attorney *an offer, in writing, to allow judgment to be taken against him for the sum specified therein.* If the plaintiff *accept the offer* and give notice thereof to the defendant or his attorney ... the offer and acceptance shall be noted in the journal, and *judgment shall be rendered accordingly....*" [Emphasis supplied.]

3. One of the original plaintiffs, Margaret Fleet Kalmar, had died while suit was pending and her estate's executor, Frank T. Fleet, was substituted as plaintiff in the action.

4. The leased interests underlie Section 13, 3N–8W, Grady County, Oklahoma.

5. Royalty is a share of profits from the sale of oil and gas produced from property which is under an oil and gas lease. *Teel v. Public Service Co. of Oklahoma,* Okl., 767 P.2d 391, 398 (1989); *Hays v. Phoenix Mutual Life Ins. Co.,* Okl., 391 P.2d 214, 216 (1964); *Doss Oil Royalty Co. v. Lahman,* Okl., 302 P.2d 157, 161 (1956); *Elliott v. Berry,* 206 Okl. 594, 245 P.2d 726, 729 (1952).

13 shall have been recovered.[6] *Although the leases filed in the Grady County Clerk's office specifically refer to the August 11, 1980 letter agreements,[7] the agreements themselves are not of record.*

The Oklahoma Corporation Commission [the Commission] "force pooled"[8] the leasehold interests in Section 13 and gave Sanguine permission to drill the Annie # 1 well.[9] Sanguine was designated unit operator.[10] EXOK's election not to participate in the well placed Sanguine in the legal status of lessee vis-à-vis the mineral owners.[11] After the well had been completed and production established, each of the mineral owners received an one-eighth royalty.[12] Later, when the operator recouped its production costs,[13] it refused to honor the *unrecorded* letter agreements.

## B. PLAINTIFFS' ACTION FOR DAMAGES AND THEIR PARALLEL ANCILLARY PROCEEDING FOR EQUITABLE ACCOUNTING

■■■ The mineral owners sued the operator for damages. They specifically invoked § 540(B)'s [14] penalty provision (prejudgment interest at the rate of 12%) for

---

**6.** Each of the letter agreements provides that a mineral owner shall receive revenue from his back-in interest *when the lessee shall have recovered the costs of drilling, testing, completing and operating any test well that should be drilled upon the leasehold.*

**7.** Each of the leases specifies that *an August 11, 1980 contract between the mineral owners and EXOK contains "additional provisions to become a part of this Lease."*

**8.** "Force pooling" occurs when the Commission requires owners of drilling rights to pool their interests and contribute to development costs. *See* 52 O.S.1981 §§ 86.1 et seq. The Commission's objective is to (1) encourage development, (2) secure the greatest ultimate recovery from the pool, (3) prevent waste and (4) protect correlative rights. *See* 52 O.S.1981 § 87.1(e).

**9.** Earlier, the Commission had created (by its order No. 137504) *640–acre drilling and spacing units for the production of oil and gas* from certain formations within the area that includes Section 13 and had designated that section as a unit for production. 52 O.S.Supp.1982 § 87.1 and 52 O.S.1981 §§ 287.1 et seq. A spacing order (1) creates the unit, (2) pools royalty interests within the unit, (3) directs that only one well shall be drilled in the unit within a specific location and (4) prohibits the drilling of a well at another location or the operation of a well drilled in violation of the spacing order. *Gulfstream Petroleum Corp. v. Layden,* Okl., 632 P.2d 376, 379 (1981).

By its May 18, 1983 order (No. 238533) the Commission *pooled all oil and gas leasehold interests in Section 13* for the production of oil and gas from the named formations and *authorized Sanguine to drill and operate the well on the unit.* For an explanation of "force pooling," see supra note 8.

**10.** *See* the explanation *supra* note 9.

**11.** The trial court's ruling—that *when Sanguine became unit operator it assumed the complete*

---

*burden of EXOK's lease and became entitled to its benefits—is not before us for review.*

**12.** Royalty interests are *pooled "by operation of law"* when the Commission's *"spacing order"* is entered. *O'Neill v. American Quasar Petroleum Co.,* Okl., 617 P.2d 181, 184–185 (1980). For an explanation of the term "spacing order," *see supra* note 9.

**13.** *In dispute between the parties throughout most (if not all) the proceedings below was the date the operator recouped its production costs.* The mineral owners urged October 1, 1984 as the operative date, while the operator contended payout did not occur until December 1, 1984.

**14.** The first-generation version of § 540(B) (amended by Okl.Sess.Laws 1985, Ch. 141 § 1; Okl.Sess.Laws 1989, Ch. 241, § 1; renumbered from § 540 by Okl.Sess.Laws 1992, c. 190, § 28) provided:

"Any said first purchasers or *owner of the right to drill and produce substituted for the first purchaser* as provided herein that *violates this act* [52 O.S.1981 § 540] shall be *liable to the persons legally entitled to the proceeds from production for the unpaid amount of such proceeds with interest thereon at the rate of twelve percent (12%) per annum, as the penalty."* (Emphasis added.)

The 1985 amendment substituted the phrase "calculated from the date of first sale" for the expression "as the penalty" and the 1989 amendment provided, *inter alia,* that interest is to be compounded annually. *The present version of § 540(B) is found in the Production Revenue Standards Act,* 52 O.S.Supp.1992 §§ 570.1 et seq. *See* § 570.10(D).

*Our citations are to enactments in effect when the mineral owners' cause of action arose in 1984; this appeal remains unaffected by the Legislature's after-enacted amendments of § 540(B) and by its recent passage of the Production Revenue Standards Act in 1992.*

violation of § 540(A) [15] and pressed for recovery under several other theories of liability.[16] As an ancillary relief to that action they sought to compel equitable accounting.[17] During the discovery phase of the case, the trial judge ordered the operator to submit its records to an audit by the mineral owners' accountant.[18] Later, he ruled in the mineral owners' favor (as a matter of law)[19] on the operator's liability[20] for the back-in

**15.** The first-generation version of 52 O.S.1981 § 540(A) (amended by Okl.Sess.Laws 1985, c. 141, § 1; Okl.Sess.Laws 1989, c. 241, § 1; renumbered from § 540 by Okl.Sess.Laws 1992, c. 190, § 28) provided in pertinent part:

"The proceeds derived from the sale of oil or gas production from any oil or gas well shall be paid to persons legally entitled thereto, *commencing no later than six (6) months after the date of first sale,* and thereafter no later than sixty (60) days after the end of the calendar month within which subsequent production is sold ... [I]n those instances where such proceeds *cannot be paid because the title thereto is not marketable,* the purchasers of such production shall cause all proceeds due such interest to earn *interest at the rate of six percent (6%) per annum, until such time as the title to such interest has been perfected....*" [Emphasis supplied.]

For the present version of § 540(A), *see* 52 O.S.Supp.1992 § 570.10(A).

**16.** Plaintiffs'-pressed allegations included (1) breach of the lease and letter agreements and violation of the pooling order, (2) bad-faith breach of the lease and letter agreements, (3) breach of fiduciary duty, (4) bad-faith breach of fiduciary duty and (5) conversion. The mineral owners also sought a declaration that the letter agreements were enforceable and an accounting to ascertain the postpayout amount due them. They requested allowance of their accounting fees and expressly invoked § 540(B)'s penalty provision (interest at 12%) for the operator's alleged violation of 52 O.S.1981 § 540(A).

**17.** *Equitable accounting is a proceeding to adjust mutual accounts and strike a balance. See* e.g., *Cline v. McKee,* 186 Okl. 366, 98 P.2d 25, 27 (1940), where a *lessor* obtained equitable accounting from a *lessee* who had agreed to share with him the profits from a business operated on the leased premises.

**18.** When the mineral owners pressed to compel discovery the trial judge directed that the operator submit its records to an audit; he ordered the audit "to begin either the week of November 2nd or November 9th [1987], whichever is convenient for Plaintiff's auditor and Sanguine."

**19.** *The trial judge resolved the liability issue in the mineral owners' favor as one of law.* The parties and the trial court treated this ruling as if it were an interlocutory summary adjudication, commonly known in the courthouse lawyers' parlance as "partial summary judgment."

Interlocutory summary adjudications are made when *some of the facts in a case are not in controversy while others remain so. See Reams v. Tulsa Cable Television, Inc.,* Okl., 604 P.2d 373, 375 (1979).

The *nisi prius* order provides in pertinent part:

"1. That the material facts as alleged by the Plaintiff are not disputed. The Court incorporates these by reference.

2. The Court finds the Defendant had both constructive and actual notice of the Plaintiffs' interest.

IT IS THEREFORE ORDERED THE PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT BE GRANTED."

**20.** On the undisputed facts which follow the trial judge ruled that the letter agreements bound the operator:

"1. On August 11, 1980, each of the Plaintiffs and Eric J. Kalmar entered into an Oil and Gas Lease with EXOK, Inc. covering their mineral interests in Section 13, Township 3 North, Range 8 West, Grady County, Oklahoma.

2. On August 11, 1980, each of the Plaintiffs and Eric J. Kalmar entered into a Letter Agreement with EXOK, Inc. covering the identical mineral interests described in Paragraph No 1.

3. The Leases contain the following express provision:

** A Contract dated August 11, 1980 between the above parties provides additional provisions to become a part of this Lease.

4. The Leases were properly recorded on September 8, 1980 in Grady County.

5. On May 18, 1983, Defendant force pooled the subject acreage, including Plaintiff's interest therein, and obtained Pooling Order No *238533* from the Corporation Commission to drill the Annie # 1 well.

6. On June 2, 1983 King & King, Inc., attorneys for Defendant herein, issued a Supplemental Title Opinion relating to Plaintiffs' and L.A. Edwards' interests in the subject acreage which states:

Your attention is directed to those certain contracts dated August 11, 1980, referred to in Basic Leases I-2, J-2, K-2, and L-2. *Verbatim copies of said agreements should be submitted for our examination and possible further requirement.*

Your attention is directed to that certain Letter Agreement between L.A. Edwards, Jr. and EXOK, Inc. dated August 15, 1980, referred to [in] Basic Lease 0-2. *You should*

interests[21] and set for jury trial the only remaining issue, that of recovery which would make the plaintiffs whole.

Shortly before trial the operator offered to confess judgment for $135,000,[22] and the mineral owners accepted the offer.

### C. THE POSTJUDGMENT PROCEEDINGS

In post-acceptance stage of the trial court's proceedings the mineral owners sought prejudgment interest, costs, and attorney's fees. *The parties compromised on the attorney's fees and ordinary cost items to be taxed. Over the operator's objection* the trial judge conducted a post-judgment evidentiary hearing to decide whether the mineral owners were entitled to interest under § 540(B)[23] and if so, to determine its amount. Proof of the mineral owners' auditing costs in the parallel equitable accounting was also adduced. The trial judge (a) awarded the mineral owners $56,578.00 in prejudgment interest at the rate of 12% as a penalty (computed by a plaintiffs'-pressed calculation formula) and (b) held he lacked statutory authority to assess accounting costs against the operator. *This appeal challenges the prejudgment interest award and the correctness of a certain recitation in the journal entry. The mineral owners' counter-appeal assigns error in the trial court's denial of their audit-related costs.*

## II

## A PARTY'S ACCEPTANCE OF A § 1101 OFFER OF JUDGMENT REMOVES ALL PREJUDGMENT ISSUES FROM THE COURT'S CONSIDERATION

### A. THE CONTROVERSY

The operator contends that—except for attorney's fees and costs—it should not be held liable for any sum in excess of the $135,000 compromised judgment.[24] It argues that, had the case gone to trial, prejudgment interest would have been an ele-

---

secure and submit verbatim copy of said agreement for our examination and possible further requirement.

7. On July 5, 1984, King & King, Inc., attorneys for Defendant herein, issued a Division Order Title Opinion relating to Plaintiffs' interests in the subject acreage again containing the identical requirement regarding the contents of Plaintiffs' Letter Agreements.

8. King and King's July 5, 1984 Division Order Title Opinion contains the following language regarding L.A. Edwards, Jr.'s Letter Agreement:

Your attention is directed to that certain Letter Agreement between L.A. Edwards, Jr. and EXOK, Inc., dated August 15, 1980, referred to in Basic Lease 0–2. You should secure and submit a verbatim copy of said agreement for our examination and possible further requirement.

CURRENT STATUS: We have examined a copy of the required Letter Agreement. This Agreement provides ... that any interest so assigned shall be subject to a ⅓ back-in after payout.... *Therefore, in the event that the Annie Well should pay out, ... the interests of EXOK, Inc. in Leases E–2 and O–2 will be subject to the ⅓ back-in owned by L.A. Edwards, Jr.*

9. Plaintiffs and Eric J. Kalmar obtained their 30% Back–In Interests by documents identical in form to those by which L.A. Edwards, Jr. obtained his ⅓ Back–In Interest. [Exhibit references omitted.]

*The operator had admitted facts 1 through 5 and argued that facts 6 through 9, although undisputed, were not material.*

21. The trial court's September 2, 1988 interlocutory order, which declares the letter agreements to be binding upon the operator, was followed on September 16, 1988 by what the operator termed its "motion to reconsider." The motion was denied on November 3, 1988. On January 19, 1989 the operator sought summary judgment, claiming the mineral owners' action was a collateral attack on the Commission's pooling order. On January 16, 1989 it brought another so-called "motion for rehearing." *The latter motions were mooted by the mineral owners' acceptance of the operator's January 30, 1989 offer of judgment.*

22. For the pertinent terms of 12 O.S.1981 § 1101, *see supra* note 2.

23. For the pertinent terms of § 540(B), *see supra* note 14.

24. The operator's offer of judgment provided:
"Defendant, Sanguine, Ltd., hereby makes the following offer to allow judgment to be taken against said defendant in the sum of $135,000. This offer is made pursuant to Okla.Stat. tit. 12, § 1101, and must be accepted within five (5) days after service hereof. This offer is, by statute, inadmissible at any trial of this action."

ment of damages for jury submission.[25] The mineral owners urge that their acceptance of the operator's offer of judgment accorded them prevailing-party status on *each of their various theories of recovery,*[26] including the operator's alleged violation of the terms of 52 O.S.1981 § 540(A).[27] According to the mineral owners, (a) since the operator must be *deemed to have violated* that section, the trial court was *required* to add the prejudgment interest afforded by § 540(B)[28] as a penalty and (b) the § 1101 offer confessed all *facts* that make prejudgment interest calculable as a matter of simple arithmetic. The mineral owners argue that prejudgment interest *must* be added by the court *after* an offeree's acceptance of *every offer of judgment,* unless the § 1101 offer *explicitly states* that prejudgment interest is included in the offer's amount.[29]

## B. THE § 1101 OFFER OF JUDGMENT

■ In an action for the recovery of money, a defendant may offer to allow judgment to be taken against him for a specified sum.[30] *Acceptance of a confessed judgment removes all prejudgment issues from the triers' consideration.*[31] *Issue removal* bars the trial court from entertaining evidence material to that which is no longer within the perimeter of adjudicable controversy. *The offer of judgment removes from judicial consideration all fact issues whose resolution is necessary to the judgment's pronouncement.*[32] *In short, a § 1101 offer's acceptance extinguishes the entire cause of action and*

---

**25.** The operator urges that we must treat the § 1101 offer of judgment just as we would treat a jury verdict. *Dulan v. Johnston,* Okl., 687 P.2d 1045, 1047 (1984). According to the operator, whether the mineral owners were entitled to prejudgment interest under § 540(B) was a jury question rather than an issue for the trial court's postjudgment consideration. The operator urges alternatively that if the mineral owners *are* entitled to prejudgment interest, the rate should be only 6% rather than the 12% rate. *Compare* the terms of 52 O.S.1981 § 540(A), *supra* note 15 with those of § 540(B) *supra* note 14. *We need not settle this argument today.*

**26.** The mineral owners had initially urged in their June 12, 1989 response to the operator's amended petition in error that some of the errors the operator asserted in its amended petition should *not* be considered. *We agree.*

The operator failed to brief its contentions that the trial court erred by (1) finding that defendant had actual or constructive notice of the mineral owners' back-in interests and (2) deciding that the mineral owners are entitled to receive all proceeds attributable to their back-in interests for all oil and gas produced after December 1, 1988. *Claims to error for which there is no support in argument and authority are deemed abandoned. We hence do not reach them either for discussion or resolution. Holbert v. Echeverria,* Okl., 744 P.2d 960, 962 n. 4 (1987); *Peters v. Golden Oil Co.,* Okl., 600 P.2d 330, 331 (1979); *Harley v. Jobe,* 207 Okl. 296, 249 P.2d 468, 469 (1952).

The other errors which the mineral owners urge upon us as nonreviewable (the trial court erred in (a) deciding that an offer of judgment is a confession of all plaintiffs' theories of recovery and (b) in establishing a payout date) *are fairly comprised within the operator's arguments (1) that the journal entry should be reformed to*

conform to the record and (2) that the offer of judgment is inclusive of interest. We hence reject the mineral owners' notion that the operator's appeal is fraught with a fatal postural defect.

**27.** For the terms of 52 O.S.1981 § 540(A), *see supra* note 15.

**28.** For the terms of 52 O.S.1981 § 540(B), *see supra* note 14.

**29.** The mineral owners point to *S.W. Bell Tel. Co. v. Parker Pest Control, Inc.,* Okl., 737 P.2d 1186 (1987); *Dulan, supra* note 25 at 1047–1048 and *Wieland v. Danner Auto Supply, Inc.,* Okl., 695 P.2d 1332 (1984). They also direct our attention to *Evans v. Sitton,* Okl., 735 P.2d 334 (1987), where we held a § 1101 offer in an amount that *explicitly included interest to be valid. The teachings of the cited cases do not support the broad rule counsel would have us adopt today; a trial court may not add prejudgment interest to every § 1101 offer of judgment which does not explicitly state that interest is included.* For the explanation that in some claims prejudgment interest may be an element of damages, *see infra* Part II.C.

**30.** For the pertinent terms of 12 O.S.1981 § 1101, *see supra* note 2.

**31.** *See Mathies v. Kittrell,* Okl., 350 P.2d 951, 953 (1960), where we held that the trial court may reject evidence material *solely* to an issue that has been *removed by an admission of liability.*

**32.** Since § 1101 operates to remove fact issues, the judgment that results is considered to be equivalent to a jury verdict. *Dulan, supra* note 25 at 1047.

*substitutes in its place the right to claim the confessed recovery.*

## C. BECAUSE PREJUDGMENT INTEREST IS AN ELEMENT OF DAMAGES FOR AN OPERATOR'S BREACH OF ITS § 540(A) DUTY, IT PRESENTS A PREJUDGMENT ISSUE TO BE DECIDED IN THE CASE

The mineral owners had pressed for interest at 12% as an element of their damages. The tendered *predicates* for interest calculation included (1) an assessment of whether title to the proceeds was marketable, (2) the critical finding of the disputed date payout occurred and (3) an inquiry into details of the operator's liability on a month-to-month basis.[33] Over the operator's objection, the trial judge decided (after a postjudgment hearing) that title to

the proceeds was marketable. He resolved in the mineral owners' favor the disputes over payout's date and the principal amount and then added $56,587.00 interest *to the judgment.*[34]

Prejudgment interest[35] is an item of recovery authorized by 52 O.S.1981 § 540(B).[36] *It constitutes a part of the judgment and is considered a part of the total liability recovered.*[37] The mineral owners rested their claim for prejudgment interest upon the terms of § 540(B). *Unlike the statute that governs liability for prejudgment interest in bodily injury cases,*[38] *§ 540(B) includes no direction to the trial judge that interest be added to a jury verdict.* Prejudgment interest in the § 540(B) sense is *not* merely compensation for the use of money belonging to another.[39] Rather, it is interest *qua* penalty[40] to

---

**33.** The calculation of prejudgment interest under § 540 would implicate the same three *predicates,* whether the ultimate ruling were to call for the application of the 6% rate that governs nonmarketable title or the 12% rate that follows a finding of marketable title. The trial judge could, at a maximum, have determined as a matter of law the title's marketability; *the other two prerequisites for postjudgment interest calculation were clearly for the triers of fact.*

**34.** The mineral owners sought interest on revenues that spanned at least a four-year period. Since production varies from month to month and year to year, an accurate interest award could only have been calculated from a detailed accounting. In dispute between the parties was the amount of principal that had accrued. The trial court calculated prejudgment interest by adopting the mineral owners' figures. *Although operator's counsel failed to resist the trial judge's adoption of the suggested method of calculating interest on the $135,000, he interposed, throughout the proceeding, the operator's objection to the postjudgment addition of any prejudgment interest.*

**35.** Interest was originally conceived under Roman law as a *debtor's penalty for delay or default in a loan's repayment. See* Leadam, INTEREST AND USURY, in 2 PALGRAVE'S DICTIONARY OF POLITICAL ECONOMY 432 (H. Higgs ed. 1925). The penalty was measured by *id quod interest*—that which stands "in between"—i.e., the difference between the creditor's current position and what it would have been if the loan had been repaid on time. Leadam, *supra. See also* W. Ashley, AN INTRODUCTION TO ENGLISH ECONOMIC HISTORY AND THEORY 196 (1966); C. McCormick, LAW OF DAMAGES § 51, pp. 207–208 (1935).

**36.** English courts did *not* allow at common law *any* interest unless the claim was based upon the parties' agreement. *De Havilland v. Bowerbank,* 170 Eng.Rep. 872, 873 (N.P.1807); *Calton v. Bragg,* 104, Eng.Rep. 828, 830 (K.B.1812).

**37.** *Huff v. State,* Okl., 764 P.2d 183, 188 (1988) (superseded by statute on other grounds, *see Bolin v. State,* Okl.App., 838 P.2d 29 (1992)). Prejudgment interest differs from *costs,* which are *not stricto sensu part of the judgment* but are ancillary to it. *Walker v. St. Louis–San Francisco Ry. Co.,* Okl., 671 P.2d 672, 674 (1983); *McAlester Urban Renewal Authority v. Hamilton,* Okl., 521 P.2d 823 (1974).

**38.** The terms of 12 O.S.1984 Supp. § 727(A)(2) (amended by Okl.Sess.Laws 1985, c. 257, § 1 and Okl.Sess.Laws 1986, c. 315, § 4) provided in pertinent part:

"[W]hen a verdict for damages by reason of personal injuries is accepted by the trial court, *the court in rendering judgment shall add interest on said verdict* at the rate of fifteen percent (15%) per year *from the date the suit was commenced to the date of verdict....*" [Emphasis supplied.]

**39.** *See Biles v. Robey,* 43 Ariz. 276, 30 P.2d 841, 845 (1934), for a comparison of interest in the ordinary sense (compensation for the use of money) with interest intended to compel the performance of an act.

**40.** *American statutes establishing penalties can be traced to early colonial days.* A 1648 Massachusetts act allowed double damages to impose "stricter accountability upon the community for its public works." *See* Morris, STUDIES IN THE HISTORY OF AMERICAN LAW at 251 (1959).

compel compliance with § 540(A).[41] The cited section (1) governs the payment of royalties on production from an oil or gas unit,[42] (2) *imposes a time frame for payment* and (3) provides for interest on the proceeds at the rate of 6% if payment is delayed because one's (claimant's) title is *unmarketable*.

The statutory penalty which may follow a § 540(A) breach must be treated as an element of the mineral owners' legal damage for the operator's default in payment;[43] it is the triers who must decide whether the operator wrongfully withheld the proceeds *after* payment was due, particularly where, as here, the penalty's calculation rests upon disputed facts.[44]

**D. THE OFFEREES' ACCEPTANCE OF THE § 1101 OFFER REMOVED FROM JUDICIAL INQUIRY THE ISSUE OF PREJUDGMENT INTEREST**

█ The mineral owners' acceptance of the operator's § 1101[45] offer of judgment removed from judicial inquiry *all* elements of the mineral owners' damages, *including prejudgment interest. It was error for the trial judge to add prejudgment inter-* est to the amount of compromised recovery. The operator's offer must be treated as *implicitly comprising its entire obligation in suit—inclusive of prejudgment interest* but exclusive of attorney's fees and costs.[46] The *nisi prius* postjudgment ruling awarding prejudgment interest must hence be reversed.

### III

**THE MINERAL OWNERS HAD BUT A SINGLE CLAIM; THE JOURNAL ENTRY MUST BE CORRECTED TO MAKE IT CONFORMABLE TO THE RECORD**

The operator challenges the correctness of the following recitation in the journal entry:

"Plaintiffs are the *prevailing parties in this matter as to all claims and allegations asserted in their Amended Petition.*"

According to the operator, the mineral owners had *only one claim* arising from its failure to recognize their back-in interests in the well. The mineral owners, on the other hand, consider each "count"[47] in

---

**41.** For the pertinent terms of § 540(A), *see supra* note 15.

**42.** Section 540(A) places the *initial obligation for payment of royalties* on the *first purchaser of production.* A first purchaser may be *exempted* from this obligation if it enters into an arrangement with an "owner of the right to drill and to produce under an oil and gas lease or force pooling order" and that *owner assumes the obligation.* 52 O.S.1981 § 540; *Seal v. Corporation Com'n,* Okl., 725 P.2d 278, 295 (1986). *The record before us today does not reveal how or when the operator came to be substituted for the first purchaser as the party responsible for royalty payments to the mineral owners.*

**43.** *See In re Levy's Estate,* 70 N.Y.S.2d 72, 76–77 (1947), where, according to the parties' agreement, a debt appeared to be interest-free. Default and demand for payment of the debt triggered a penalty which was deemed to be *interest in the nature of damages.*

**44.** *See, e.g., Manglesdorf Seed Co. v. Pauls Valley Grain & Seed Co.,* 155 Okl. 270, 8 P.2d 1100, 1102 (1932), where we construed a statute that allowed the jury to award interest "[i]n an action for the breach of an obligation not arising from contract, and in every case of *oppression,* fraud or malice." [Emphasis supplied.] The statutory interest was held to be (a) an element of the plaintiff's damages and (b) a jury question (in the absence of the parties' agreement that the issue would be tried to the court).

A *trial judge* may add prejudgment interest to a jury verdict *only if* (1) interest should clearly be allowed, (2) it is crystal-clear that the *jury* did *not* include interest in the verdict and (3) *the trial court has sufficient data to make the interest added or allowed a mere mathematical computation.* 12 O.S.Supp.1984 § 727(A)(2); *Walker, supra* note 37 at 673–674; *Mayor v. Weaver,* 207 Okl. 464, 250 P.2d 844, 846 (1952); *Fletcher v. Allen,* 195 Okl. 307, 157 P.2d 452, 453 (1945).

For the explanation that the mineral owners' acceptance of the operator's offer of judgment *removes all elements of plaintiff's damages, including the right to interest,* and places them beyond the adjudicative range of the dispute, *see infra* this part.

**45.** For the pertinent terms of 12 O.S.1981 § 1101, *see supra* note 2.

**46.** *See Wieland, supra* note 29 at 1334.

**47.** The mineral owners view their theories of recovery as separate "counts."

their amended petition as a *separate claim.* They urge that the trial court decided one of their "claims" in their favor and the operator's *offer of judgment confessed all the others.*

 *Only a single cause of action can be predicated on the same set of facts,*[48] but different remedies and theories of liability may be pressed in support of each claim alleged.[49] Although the mineral owners asserted several discrete *theories* of recovery and invoked a parallel *remedy* of equitable accounting, *they had only one claim* for damages.

After the trial judge had resolved in the mineral owners' favor the operator's liability for failure to recognize the back-in interests, no alternative *theories of relief* remained viable.[50] The *nisi prius* recital that plaintiffs are the prevailing parties on *all claims and allegations* asserted in their amended petition is overbroad.[51] *The journal entry is accordingly ordered to be corrected and the trial judge directed to sign a nunc pro tunc substitute which would reflect, in conformity to the record, that plaintiffs had prevailed on their single claim for damages.*[52]

**48.** When a claim for damages arises from one occurrence or transaction, it affords the plaintiff but a single cause of action. *See Hadnot v. Shaw,* Okl., 826 P.2d 978, 987 (1992); *Eason Oil Co. v. Howard Engineering,* Okl., 755 P.2d 669, 672 n. 13 (1988); *Chandler v. Denton,* Okl., 741 P.2d 855, 863 n. 20 (1987); *Reams supra* note 19 at 374–376 (1979); *Retherford v. Halliburton Co.,* Okl., 572 P.2d 966, 968–969 (1978).

**49.** *See* in this connection *Silver v. Slusher,* Okl., 770 P.2d 878, 882 n. 11 (1989), cert. den., 493 U.S. 817, 110 S.Ct. 70, 107 L.Ed.2d 37 (1989).

**50.** The trial judge's ruling that the operator was liable for the back-in interests was *interlocutory* and hence subject to reconsideration *before* the mineral owners' acceptance of the operator's § 1101 offer of judgment.

**51.** A plaintiff does not *"prevail"* on its allegations. Allegations are made *in support* of the plaintiff's *claim.*

**52.** The mineral owners point to *Werfelman v. Miller,* 180 Okl. 267, 68 P.2d 819, 820 (1937), as authority for their argument that this court lacks jurisdiction to correct the trial court's order. *Werfelman* does not support their theory; rather, it teaches that this court has full power

## IV

## THE COSTS OF EQUITABLE ACCOUNTING MAY BE ALLOWED *IN TOTO* OR BE APPORTIONED BETWEEN THE PARTIES

The mineral owners challenge the trial court's failure to award them the costs of a court-ordered audit of the operator's accounts.[53] Since the operator had furnished them only three inconclusive documents, the mineral owners invoked the discovery process to compel an accounting. *The trial judge ordered the operator to submit its records for an audit by the mineral owners' accountant.*[54]

*The operator does not contest here the mineral owners' account of the operative facts that surround the audit.* Rather, it argues that (a) the mineral owners brought no more than an action for damages in which equitable accounting costs are *not* recoverable and (b) their quest for accounting costs is no more than a futile attempt to recover an "expert witness fee."[55]

 As a matter of ancillary relief (to their action at law for damages) the mineral owners' pressed for an accounting of the oil and gas revenue.[56] Equitable

to correct a trial court's record. *See McCullough v. Safeway Stores, Inc.,* Okl., 626 P.2d 1332, 1334 (1981).

**53.** For the definition of equitable accounting, *see supra* note 17.

**54.** For the pertinent terms of the trial court's order, *see supra* note 18.

**55.** The operator points to *Dulan, supra* note 25 at 1048, which counsels that, absent statutory authorization, the fees of an expert witness are not recoverable as costs. *Effective Sept. 1, 1992 expert witness fees are recoverable in actions pressed under the Production Revenue Standards Act.* 52 O.S.Supp.1992 § 570.14(C).

**56.** *Where both legal and equitable claims arise out of the same transaction, the equity issues may be tried to the court and the legal issues must be submitted to a jury. Mashunkashey v. Mashunkashey,* 189 Okl. 60, 113 P.2d 190, 192 (1941). The mineral owners *pressed only one claim below,* yet *a court-ordered remedy of equitable accounting (ancillary to that action) was necessary to ascertain the mineral owners' post-payout due. Although the parties later treated*

accounting may be decreed in an action which is founded primarily upon other grounds, if it is necessary to afford the parties complete relief.[57] The terms of § 540(A) in force when the claim arose provided that the operator was liable for payment under that section if he had *assumed the responsibility of paying those who were legally entitled to the proceeds.*[58] Equitable accounting was essential to resolve the issue of how much revenue attributable to the mineral owners' back-in interests had come to the operator for distribution to the rightful owners.[59]

*Nisi prius* taxable costs fall into *two categories:* (a) *ordinary court costs—* items that the clerk may tax *de cursu*[60] and (b) *litigation expenses that may have arisen in an equity suit or, as here, in an ancillary equitable proceeding.*[61] Equitable litigation expenses (as opposed to *ordinary* costs taxable *de cursu* ) are explained in *Rand v. Nash.*[62] In a stockholder's action for a receivership, the *Rand* plaintiff sought court appointment of an accountant to audit corporate books and report his findings to the court. The appointed auditor completed the assigned task. After the case had been settled, the trial court taxed the accountant's fees as costs. *Rand teaches that under the trial court's equitable powers—and in the absence of a statute to the contrary—audit-related costs are clearly taxable in equity as a litigation expense.*

*In an equitable setting* costs should not be *so rigidly confined* to *specifically enumerated statutory allowances* as to exclude any other *necessary expenditures.*[63] Allowance of equitable costs rests in the discretion of the chancellor.[64]

■ The audit costs in the case here for review clearly fall under the broad rubric comprised within the equity exception to taxable or "true" costs items; they were neither expert witness fees nor taxable by the clerk *de cursu.* The accounting fees were subject to assessment as litigation cost allowable in equity. *Since equitable costs must be tailored to the equities in the case,* the chancellor must be set free to

the accounting as a discovery dispute, equity jurisprudence applies to the parallel accounting phase of the case.

57. *Fernow v. Gubser,* 196 Okl. 58, 162 P.2d 529, 532 (1945).

58. For the pertinent terms of § 540(A), *see supra* note 15.

59. Where *discovery is needed* in an action on a complicated mutual account and all of the knowledge lies with one of the parties, *equity will assume jurisdiction to compel an accounting.* *Field v. Spencer,* 176 Okl. 57, 54 P.2d 146, 147–148 (1936).

60. For definition of costs taxable *de cursu, see Chamberlin v. Chamberlin,* Okl., 720 P.2d 721, 726 n. 25 (1986).

61. Effective September 1, 1992 *litigation expenses* incurred as a result of violations of the latest generation of § 540(A), the Production Revenue Standards Act, 52 O.S.Supp.1992 §§ 570.1 *et seq., are recoverable. See* 52 O.S.Supp.1992 § 570.14(A)(2), which provides that district courts shall have jurisdiction to determine the entitlement of any owner in a well to:

"2. Damages, interest, *court costs,* attorneys' fees *or allowable litigation expenses* incurred as a result of the violation of [52 O.S.Supp. 1992 §§ 570.1 *et seq.*]." [Emphasis supplied.]

62. 174 Okl. 525, 51 P.2d 296, 297–298 (1935). *See Bellamy v. Washita Valley Telephone Co.,* 25 Okl. 18, 105 P. 340, 341 (1909), where we affirmed the trial court's ruling that plaintiff had improperly procured a receiver's appointment and should in all fairness pay the receivership expenses. *Bellamy* counsels that in the exercise of judicial discretion—*independently of statute*—a chancellor has the power to award receivership costs against a party litigant. .

63. *Hoffman v. Morgan,* 206 Okl. 567, 245 P.2d 67, 70 (1952). Expenses of a guardian ad litem, *although not specifically mentioned in a statute,* are allowable as *equitable litigation expenses.*

64. *M.E. Trapp, Associated v. Tankersley,* 200 Okl. 117, 191 P.2d 202, 206–207 (1948). During an equitable dissolution proceeding the plaintiffs sought a court-appointed auditor and custodian for some partnership books. Serious differences had arisen between the parties and their animosity was apparent. The court refused to order an audit, but appointed a custodian for the partnership records. Although the defendants showed that they did not interfere with plaintiffs' examination of the books, *we affirmed the trial judge's appointment of the custodian and his allowance of custodian's fees against the partnership. See Rand, supra* note 62; *see also* J. Pomeroy, 4 A Treatise On Equity Jurisprudence § 1421 (5th ed. 1941).

decide on remand whether the audit fee is to be allowed in full or be apportioned between the parties. Our pronouncement in *Dulan v. Johnston* [65]—that only those expenditures which are taxable by statute fall within the term "costs"—does not apply here.

The *nisi prius* denial of the mineral owners' accounting costs is hence reversed. The trial court may allow on remand the accounting fees in full or apportion them as the equities are shown to require, taking due consideration of the parties' litigation conduct.

### SUMMARY

The mineral owners' acceptance of the operator's § 1101 offer of judgment removed from judicial inquiry the damage-related dispute over prejudgment interest. The operator's confessed judgment must hence be treated as comprising its *entire obligation* in suit (inclusive of interest but exclusive of attorney's fees and costs).

*The trial court's order is accordingly reversed insofar as it adds prejudgment interest to the operator's confessed liability. The judgment's entry is ordered corrected to make it conformable to the record by reflecting the mineral owners to be the prevailing parties on their single claim at law for damages. On remand the trial court is directed to consider the equities in the case and either allow against the operator the entire auditor's fee or apportion that expense between the parties.*

**ORDER REVERSED AND CAUSE REMANDED.**

HODGES, C.J., LAVENDER, V.C.J., and HARGRAVE, OPALA, ALMA WILSON, SUMMERS and WATT, JJ., concur.

SIMMS, J., concurs in parts I & IV and dissents from parts II & III.

KAUGER, J., not participating.

---

**65.** *Dulan, supra* note 25 at 1048.